```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE CHEESECAKE FACTORY ASSETS, CO.
LLC, *et al.*,

                    Plaintiffs,            REPORT AND
                                           RECOMMENDATION
      -against-
                                           05 CV 3243 (NGG)(RML)
THE PHILADELPHIA CHEESE STEAK
FACTORY INC., *et al.*,

                    Defendants.
-------------------------------------------------------------X
```

LEVY, United States Magistrate Judge:

By order dated July 31, 2006, the Honorable Nicholas G. Garaufis, United States District Judge, referred plaintiffs' motion for entry of a default judgment to me to conduct an inquest and issue a report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs be awarded $20,171.82 in attorney's fees and costs.

## BACKGROUND AND FACTS

Plaintiffs, The Cheesecake Factory Assets Co. LLC and The Cheesecake Factory Inc. ("plaintiffs" or "The Cheesecake Factory"), filed this trademark infringement action in July 2005 against The Cheese Steak Factory, Inc. ("defendant" or "The Cheese Steak Factory") and an individual believed to be that business's owner. Plaintiffs alleged that defendants planned to open a restaurant called "The Cheese Steak Factory" on Queens Boulevard in Queens, New York, and in early 2005 advertised that their restaurant would be "coming soon." (Complaint, dated July 7, 2005 ("Compl."), ¶ 14.) In April 2005, plaintiffs allegedly received information that a sign and storefront had been erected at the restaurant's location and that The Cheese Steak Factory was using The Cheesecake Factory's trademarked logo (the "Cheesecake Logo") as its

own. (Compl. ¶ 15.) According to the complaint, defendants continued to use the Cheesecake Logo despite requests from The Cheesecake Factory that the logo be removed. (Compl. ¶¶ 17, 19.) The Cheese Steak Factory is in no way affiliated with The Cheesecake Factory, and The Cheese Steak Factory has never had permission to use the Cheesecake Logo. (Compl. ¶ 18.)

Plaintiffs state that they originally attempted to locate the owner of The Cheese Steak Factory by contacting A.A.G Management ("A.A.G."), the lessor of the property in question on Queens Boulevard. (Declaration of Mark N. Mutterperl, Esq., dated Nov. 4, 2005 ("Mutterperl Decl."), ¶ 3.) A.A.G. complied with plaintiffs' request, and plaintiffs were soon contacted by a man named Peter Ivory, who claimed to be the owner of The Cheese Steak Factory. (Id.) Later, plaintiffs learned that "Peter Ivory" was a fictitious name, and they served a subpoena on A.A.G. on August 2, 2005. (Id. ¶ 5.) Based on the response to the subpoena, plaintiffs learned that Peter Inzerillo and Giusepa Sirio were the true owners of The Cheese Steak Factory. (Id.) Plaintiffs amended their complaint to name Mr. Inzerillo and Ms. Sirio as defendants on August 15, 2005. (See Amended Complaint, dated Aug. 15, 2005, ¶¶ 4-5.)

Because The Cheese Steak Factory and its owners failed to answer the complaint, plaintiffs moved for a default judgment against The Cheese Steak Factory on August 25, 2005.[1] On August 30, 2005, Judge Garaufis granted this motion and referred the matter to me for an inquest on damages and attorney's fees.[2] (See Order, dated Aug. 30, 2005.) Plaintiffs request

---

[1] This default judgment and application for attorney's fees and costs applies only to the corporate defendant. One of the individual defendants, Giusepa Sirio, eventually filed an answer, and the default against her was vacated. In her answer, Ms. Sirio avers that she is the sole owner of The Cheese Steak Factory. (See Answer, filed Aug. 4, 2006, ¶ 4.)

[2] Judge Garaufis vacated this order on March 27, 2006, but then reinstated it orally at a conference on July 31, 2006.

attorney's fees and costs sustained through November 4, 2005. (Mutterperl Decl. ¶¶ 12, 18.)

**DISCUSSION**

Plaintiffs request $40,001.25 in attorney's fees under the Lanham Act. Section 35(a) of the Lanham Act permits the court to award reasonable attorney's fees to the prevailing party in "exceptional cases." See 15 U.S.C. § 1117(a). In the Second Circuit, exceptional cases warranting the award of reasonable attorney's fees are limited to those evidencing fraud, bad faith, or willful infringement. See Gordon and Breach Sci. Publishers S.A. v. American Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999) (citing Twin Peaks Prods, Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993)); see also Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) ("'exceptional' circumstances include willful infringement"). Even with a finding of bad faith, the decision to award attorney's fees remains within the sound discretion of the district court. See Gidatex v. Campaniello Imports, Ltd., 82 F. Supp. 2d 136, 147 (S.D.N.Y. 2000).

In the Complaint, plaintiffs allege that The Cheese Steak Factory's use of the Cheesecake Logo was willful and intentional. (See Compl. ¶ 28.) In a default, the factual allegations set forth in the complaint are deemed true (see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)) and "[a] defaulting party ordinarily cannot contest the merits of the plaintiff's claim absent 'indisputable' contradictory evidence." In re Crazy Eddie Sec. Litig., 948 F. Supp. 1154, 1160 (E.D.N.Y. 1996) (citation omitted). Defendant has failed to file an answer or otherwise submit any evidence to contradict the allegations set forth in the Complaint.

Defendant's infringement of plaintiffs' Cheesecake Logo is therefore deemed willful.[3]  See Tiffany (NJ) v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).  See also Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (explaining that the court may infer willfulness from a defendant's failure to appear and defend an action in which the plaintiff alleges willful conduct).  The evidence submitted by the plaintiffs sufficiently demonstrates that defendant used the Cheesecake Logo in connection with its restaurant and refused to cease doing so even after plaintiffs asked defendants, both orally and in writing, to remove the logos from the signs and storefront.  I am persuaded that defendant's violations were willful and thus constitute exceptional circumstances.  Therefore, an award of reasonable attorney's fees is appropriate.

The Second Circuit has adopted the lodestar approach to calculating attorney's fees.  See Bourgal v. Lakewood Haulage, Inc., 827 F. Supp. 126, 129 (E.D.N.Y. 1993) (citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989)).  In computing the lodestar, the court multiplies the number of hours reasonably worked by what it deems to be a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Bourgal, 827 F. Supp. at 129.  Awards for legal fees are calculated in accordance with "'the prevailing market rates in the relevant community. . . .'"  Chambless, 885 F.2d at 1058 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)).  Moreover, "the district court must ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  Id. at 1058-59 (quoting Blum, 465 U.S. at 896 n. 11).  When the lodestar has been calculated, the court

---

[3] Defendant, a corporation, failed to answer or otherwise appear because it did not retain counsel.  Ms. Sirio, the company's principal, has advised the court that neither she nor the corporation can afford to hire an attorney.

considers "subjective factors, such as the risk of the litigation, the complexity of the issues, and the skill of the attorneys" (New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1140 (2d Cir. 1983)) and should exclude hours that are "excessive, redundant, or otherwise unnecessary." See Hensley, 461 U.S. at 434. "Because attorney's fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court." Clark v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (citing Hensley, 461 U.S. at 437). Morever, a fee applicant has the burden of establishing its hourly rate and hours expended. See Blum, 465 U.S. at 896 n. 11. Finally, determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. See Chambless, 885 F.2d at 1058-59.

*1. Number of Hours Worked*

Plaintiffs' counsel, Fulbright & Jaworski L.L.P. ("Fulbright"), asserts that from June 2005 through November 2005, its attorneys expended a total of 106.25 hours representing The Cheesecake Factory in this action. (Mutterperl Decl. ¶12.) Fulbright further asserts that 20.75 hours were expended by one partner, 79.0 hours were expended by associates, 2.5 hours were expended by a paralegal, and 4.0 hours were expended by clerks. (Id.) I find this number of hours excessive.

Primarily, plaintiffs have not met their burden of showing that they are entitled to attorney's fees from this defendant for the period after August 30, 2005, when the instant default judgment was entered. (See Order, dated Aug. 30, 2005.) Plaintiffs have not shown that the work performed after the date of default – even if it related to Ms. Sirio as an individual defendant – is chargeable to the corporate defendant, which is the sole subject of this motion.

Therefore, I recommend that plaintiffs be awarded attorney's fees from June 2005 through August 30, 2005. During that time, Fulbright's records indicate that its attorneys billed $24,235[4] on this matter. (Mutterperl Decl., Ex. C.)

Moreover, it is apparent from the detailed schedule of hours billed that Fulbright attorneys bill in fifteen-minute increments. (Mutterperl Decl., Ex. C.) Because of this, any task that takes fifteen minutes or less appears as fifteen minutes on the schedule, regardless of whether the task actually took fifteen minutes or two minutes. Therefore, attorneys frequently billed fifteen minutes for activities such as sending an e-mail or making a telephone call and charged as much as $148.75 for one of these routine tasks. (Id.) Courts have consistently criticized this practice. See, e.g., MzH v. State Industrial-Trade Unitary Enterprise "Belaya Russ", No. 03 CV 3774, 2003 WL 22852895, at *1 (S.D.N.Y. Nov. 10, 2003); Oxford Venture Fund Ltd. P'ship v. CIT Group/Equip. Fin., No. 89 CV 1836, 1990 WL 176102, at *2 (S.D.N.Y. Nov. 5, 1990). Additionally, when associate Emily Frangos replaced associate Jenifer S. McIntosh in August 2005, Ms. Frangos billed substantial time for office conferences, ostensibly in order to bring herself up to date on the matter. (Id.) Having a new attorney take over from an attorney who has left the firm is a cost of doing business, and this cost should not be borne by the defendant.

2. *Reasonable Hourly Rate*

Three Fulbright attorneys and three staff members spent time on this matter: partner Mark N. Mutterperl ($595/hr), associate Jenifer S. McIntosh ($350/hr), associate Emily

---

[4] The court derived this amount by adding the total amounts billed from June 2005, July 2005 and August 2005, less the $247.50 billed by Ms. Frangos on August 31, 2005, for the reasons explained below.

Frangos ($330/hr), paralegal Emily Ranieri ($180/hr), clerk Sylvester Hinds ($185/hr), and clerk Victor Rivera ($165/hr). In determining what constitutes a reasonable hourly rate, the court must look to the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Lucian v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997). Plaintiffs assert that these rates are the prevailing rates for Manhattan law firms,[5] yet this court's independent research failed to yield a single case that has upheld a rate approaching $600 per hour for a partner. The same can be said for associates and staff members – recent case law in this circuit has not approved rates over $300 per hour for associates or $150 per hour for paralegals/clerks. In fact, in a recent case in which Morgan & Finnegann LLP requested rates of $530-540 per hour for partners, $205-215 per hour for associates, and $80-120 per hour for staff, the court found these amounts "demonstrably excessive." DCH Auto Group (USA) Inc. v. Fit You Best Automobile, Inc., No. CV-05-2973, 2006 WL 279055, at *6 (E.D.N.Y. Jan. 10, 2006).

When a court determines that plaintiffs have requested an excessive amount in attorney's fees, "[t]he court is not required to 'scrutinize each action taken or the time spent on it' when determining what is reasonable." Colegrove v. Barnhart, 435 F. Supp. 2d 218, 221 (W.D.N.Y. 2006). See also Aston v. Secretary of Health and Human Serv., 808 F.2d 9, 11 (2d Cir. 1983). Instead, a court "has discretion to simply apply a reasonable percentage reduction." Id. See also La Barbera v. J.E.T. Res., Inc., 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005) ("it is within the discretion of the district court to make an across the board percentage reduction."). After careful and thorough consideration, I find that a twenty-five percent across-the-board

---

[5] Manhattan law firms are entitled to Manhattan rates, even if litigating in the Eastern District of New York rather than the Southern District. See Nicholson v. Williams, No. CV-00-2229, 2004 WL 4780498, at *6 (E.D.N.Y. Apr. 5, 2004).

reduction is appropriate here.  See, e.g., DCH Auto Group (USA) Inc., 2006 WL 279055 at *6 (total requested reduced by thirty-five percent); S.E.C. v. Goren, 272 F. Supp. 2d 202, 213 (E.D.N.Y. 2003) (hours reduced by thirty percent); La Barbera v. J.E.T. Res., Inc., No. CV-0104039, 2005 WL 2898736, at *5 (E.D.N.Y. Nov. 4, 2005) (hours reduced by fifty percent). Fulbright billed the plaintiffs a total of $24,235 for the period culminating in the instant default judgment. Accordingly, after a twenty-five percent reduction, I recommend a fee award of $18,176.25.

Plaintiffs also request an award of costs. Courts generally award costs to prevailing parties in cases involving violations of the Lanham Act.  See Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999); 15 U.S.C. § 1117(a). Taxable costs under 28 U.S.C. § 1920 and Local Civ. R. 54.1(c) include the $250 filing fee for a federal action.[6] In addition, "[o]ut-of-pocket litigation costs are generally recoverable if they are necessary for the representation of the client." Tri-Star Pictures, 42 F. Supp. 2d at 306. As a result of defendant's default, plaintiffs have prevailed and are therefore entitled to recover reasonable costs.

Plaintiffs seek a total of $2,905.55 in costs. Of that amount, $250 is the filing fee. Plaintiffs also seek $322.56 for service of process, $50 for witness fees (subpoena of A.A.G.), $254.70 for internal photocopying, $7.29 for telephone charges, $20 for fax charges, $20.79 for postage, $184.16 for courier services, $339.20 for investigator services, and $22.10 for transportation. These are reasonable out-of-pocket expenses that are customarily compensable. See, e.g., Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket

---

[6] Plaintiff commenced this case before April 2006, when the filing fee was raised to $350.

disbursements for items such as photocopying, travel, and telephone costs are [compensable but] routine office overhead . . . must normally be absorbed within the attorney's hourly rate."); Duke v. County of Nassau, No. 97-CV-1495, 2003 WL 23315463, at *6 (E.D.N.Y. Apr.14, 2003) ("Courts have continuously recognized the right for reimbursement of costs such as photocopying, postage, [and] transportation[ ] . . . .") (citation omitted); United States Media Corp., Inc. v. Edde Entm't, Inc., No. 94 Civ. 4849, 1999 WL 498216, at *10 (S.D.N.Y. July 14, 1999) (postage, courier service, and telephone charges "are recoverable as the reasonable out-of-pocket disbursements of an attorney, billable to the client."); Bhatia v. Air India, No. 90 Civ. 5445,1992 WL 232146, at *5 (S.D.N.Y. Sept. 2, 1992) (awarding plaintiff costs and disbursements for long-distance telephone calls, facsimiles, photocopying, postage, express mail, service of process, messenger service, transportation, and deposition transcripts).

Additionally, plaintiffs seek $1,434.75 in electronic research costs. In Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004), the Second Circuit addressed the issue of reimbursement for online legal research costs and held that, in the context of a fee-shifting provision, the charges for online research "may properly be included in a fee award" because the use of such services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar. It stated that if the party seeking costs "normally bills its paying clients for the cost of online research services, that expense should be included in the fee award." Id. Post-Arbor Hill decisions in this district have allowed reimbursement for computerized research. See, e.g., Aiello v. Town of Brookhaven, 94-CV-2622, 2005 WL 1397202, at *8 (E.D.N.Y. June 13, 2005). It is clear from the billing records that Fulbright billed these costs to the plaintiff.

However, of the $2,905.55 in costs that plaintiffs seek to recover, $909.98 was incurred after the date on which the default judgment was entered. As is the case with attorney's fees, plaintiffs cannot recover from this defendant costs incurred after August 30, 2005. Therefore, the amount that plaintiffs are entitled to recover in costs is $1,995.57.[7]

**CONCLUSION**

For the reasons stated above, I respectfully recommend that plaintiffs be awarded $18,176.25 in attorney's fees and $1,995.57 in costs, for a total of $20,171.82. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Garaufis and to my chambers, within ten (10) business days. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       November 30, 2006

---

[7] The court derived this amount by adding the costs listed from the June 2005, July 2005 and August 2005 bills, less the $0.60 incurred on August 31, 2005 and the $26.32 meal charge from July 15, 2005 that plaintiffs did not seek to recover in their submission. It also bears noting that plaintiffs should not be allowed to recover the full $322.56 for service of process when the cost of service on the corporate defendant was $127.00, and the remaining $195.56 was for service of process on the individual defendants. Because plaintiffs have not shown why they are entitled to recover the $195.56 for service on the individual defendants, that amount should be excluded. However, because the individual defendants were served after August 30, 2005, the $195.56 has already been deducted from the total costs.